Mary C. CONRAD, Plaintiff-Appellant, v. Robert O. CON-
RAD, Defendant-Respondent.

Supreme Court

*No. 77–017. Submitted on briefs October 10, 1979.—
Decided November 6, 1979.*
(Also reported in 284 N.W.2d 674.)

For the appellant the cause was submitted on the briefs of *Sandra A. Edhlund* and *Edhlund & Rachofsky* of Milwaukee.

For the respondent the cause was submitted on the brief of *Ray T. McCann* of Milwaukee.

PER CURIAM. This is an appeal by the wife from an order refusing her motion to reopen the property division of the divorce judgment entered in this case.

The parties in this action were married on September 11, 1965. As a result of this marriage, a daughter was born on January 25, 1967, and a son on January 26, 1969. On October 24, 1974, the wife commenced an action for divorce against the husband alleging cruel and inhuman treatment on his part.

On November 8, 1974, and November 29, 1974, the wife and husband respectively each filed a Financial Declaration with the Family Court in which they detailed their assets and liabilities. In her Financial Declaration the wife listed several bank and savings and loan accounts held jointly with her husband and several accounts held solely by her husband. She also listed three accounts held solely in her own name which totaled $2,923.99.

Similarly, the husband in his Financial Declaration listed several accounts held jointly with his wife and one account held solely by himself. According to the husband's declaration, the joint accounts totaled approximately $30,500. The husband also listed several parcels of real property held either solely by himself or jointly with his wife.

At the time of these Financial Declarations, the wife was employed as a secretary with a net monthly income of $608.38. The husband was employed as an auditor for the state, with a net monthly income of $1,076.

The merits of the divorce action were tried on June 22, 1976, and the trial court granted a divorce to the wife based on her claim of cruel and inhuman treatment. The trial judge adjourned the action for a trial on the property division, telling the parties that he would be happy to consider a stipulation with respect to a division of the estate.

On the adjourned date, December 1, 1976, the parties appeared in person and by their respective counsel and informed the court that an oral stipulation with respect to the division of the estate had been reached. The wife's attorney stated the stipulation into the record as follows:

"That a propery division in this case will be itemized as follows: That the plaintiff will receive from the defendant the total sum of $43,750.

"In addition thereto, he will pay $100 per month as support for the two minor children making a total payment by the defendant of $200.

"That each party, this is the plaintiff and the defendant, will be entitled to take one of the children as a deduction on their income tax, both state and federal.

"That neither party will receive alimony and alimony to both will be denied.

"That each party will be responsible for their own attorney's fees.

"With regard, Your Honor, to the payment of the $43,-700, our understanding is that will be in cash and that it will be finalized six months from today's date. . . ."

The matter of custody was discussed by the trial court and the attorneys and an agreement was also reached with respect to that issue. The trial court then, without directing any questions to the parties themselves, made the following statement on the record:

"With regard to the division of estate, the court will make the following orders:
" . . .
"The court will order that the defendant pay to the plaintiff the sum of $43,750 to be paid as follows: $10,000 to be paid within 30 days from today's date, the balance of $33,750 to be paid without interest to the plaintiff within six months from today's date. . . ."

This hearing concluded with the husband's attorney stating that the record should show that both parties were in court, heard the stipulation, and agreed to it. Even though no questions were asked of the parties on the record, the court agreed.

Therefore, the wife's attorney drafted findings of fact and conclusions of law and a judgment for the court's signature. In these findings, the joint accounts held by the parties totaling $33,486.12 were listed. Additionally, accounts held solely in the wife's name were listed. The three accounts that the wife had revealed on her Financial Declaration filed on November 8, 1974, were again listed, plus another savings account she had opened. The total of the accounts held solely in the wife's name was $5,442. The proposed findings of fact and the judgment contained the following provision with respect to the wife's solely owned accounts:

"As to paragraph II entitled Accounts in Plaintiff's Name Only totaling $5,442, it is specifically understood by and between the parties that the sum of $5,442 contained in said accounts are a part of the joint marital estate. It is further understood that said amount is to be included in the order providing for a division of the joint marital estate and that defendant may subtract the

amount of $5,442 which is already in the possession of the plaintiff through the passbooks to the accounts identified in II from the total amount of the estate awarded to the plaintiff in the sum of $43,750."

The total value of all the property listed in the proposed findings and judgment, including the wife's accounts, was $124,167.69.

After the wife saw the proposed findings and the judgment drafted by her counsel, she objected to the provision quoted above which permits the husband to subtract the $5,442 she already has in her possession from the $43,750 he was required to pay to her. The wife's attorney, unable to satisfactorily explain this provision to her, asked the court to. The parties, without filing any formal motion, appeared before the trial judge on February 3, 1977, for what was referred to as an "interpretation of the judgment . . . predicated upon a stipulation . . ." At this hearing, both attorneys referred to the fact that the $43,750 figure was arrived at after substantial negotiations had been held in chambers. The wife's attorney stated that he had a problem of communication with the plaintiff and asked the court to talk to her to explain the effect of the property division.

The record reveals an extensive colloquy between the parties, their attorneys, and the judge then took place. The wife made known her objection to subtracting the $5,442 she held in accounts in her own name from the $43,750 the court had ordered the husband to pay her as a property division. She also questioned the total value of the estate stating that her attorney had told her it was $90,000, while the figures used in the proposed findings and judgment indicate a total value of $124,167.-69.

The court repeatedly stated that the valuation of the estate was based on the Financial Declarations the parties had filed and the division was based on the stipula-

tion she had agreed to. The wife objected to basing the property division on the Financial Declarations which were, at that time, over two years old. She was informed, however, by the attorneys and the court that they could not relitigate nor retry the case ". . . at this late stage." The court stated that judgment would be entered as previously orally ordered. Thereafter, on February 8, 1977, the court signed the proposed findings of fact and conclusions of law, and the judgment was entered.

After the judgment was entered, the wife substituted attorneys and then filed a notice of motion and motion dated April 29, 1977, asking the court to "correct the judgment, order and to reopen the judgment." She asked the court to reopen and reconsider the judgment of divorce as it relates to, among other things, the property division. As grounds for this motion, the wife claimed that her agreement to the stipulation was obtained under duress and was coerced and not wholly knowing and voluntary; that the defendant had failed to make a full disclosure of his assets to the court; and that the judgment was inequitable and insupportable in light of the evidence of record. The wife filed an affidavit in support of her motion in which she asserted that her trial counsel had told her immediately prior to the December 1, 1976 hearing that she had to agree to the proposed settlement. She further asserted that at that time she was not fully informed of the nature, extent, and terms of the proposed stipulation to which she was told to agree.

The trial court, without a hearing, denied this motion to reopen on June 21, 1977.

It is from this order denying her motion to correct and reopen the judgment that the plaintiff now appeals to this court and states the issue on appeal to be:

"Did the trial court abuse its discretion in denying plaintiff-appellant's motion to correct and reopen the judgment?"

On appeal, the wife claims that her motion to reopen the judgment as it relates to the property division was brought pursuant to sec. 247.37 (2), Stats., even though she did not specifically cite that section in her motion in the trial court. Sec. 247.37 (2), Stats., provides in pertinent part:

"(2) So far as said judgment affects the *marital status* of the parties, the court has the power to vacate or modify the same for sufficient cause shown, upon its own motion, or upon the application of either party to the action, at any time within six months from the granting of such judgment. . . ." (Emphasis added.)

Clearly, that portion of the judgment which the wife wants reopened does not deal with the marital status of the parties, but rather with the property division ordered by the trial court. Her reliance on appeal on sec. 247.37 (2), Stats., is misplaced. That section provides no authority for reopening a divorce judgment as it relates to property division.

The trial court did, however, have the power to reopen the divorce judgment, including the property division, in this case. In *Doheny v. Kohler*, 78 Wis.2d 560, 254 N.W. 2d 482 (1977), this court held that a party has a right to seek to reopen a divorce judgment dealing with the division of the marital estate even though the judgment was based on a stipulation of the parties. There we held the motion to reopen a judgment allegedly obtained by mistake, inadvertence, surprise, or excusable neglect, must be brought within the one-year time limitation of sec. 269.46 (1), Stats. 1973.

Former section 269.46 has been replaced by sec. 806.07, Stats., which is applicable to this case. The provision permitting relief from judgments, orders or stipulations obtained by mistake, inadvertence, surprise or excusable neglect is now found in sec. 806.07 (1) (a). The one-year

time limitation for such motion is retained in sec. 806.07 (2).

The wife's motion to reopen the judgment in this case did not allege that such judgment was obtained by mistake inadvertence, surprise or excusable neglect. See, *e.g., Wagner v. Springaire Corp,* 50 Wis.2d 212, 184 N.W.2d 88 (1971), and *Padek v. Thornton,* 3 Wis.2d 334, 88 N.W.2d 316 (1958). However, we think that the wife's motion, fairly construed, was sufficient to request relief from the judgment pursuant to sec. 806.07 (1) (h), Stats., for ". . . any other reasons justifying relief. . . ." A motion based on sec. 806.07 (1) (h) must be made within a reasonable time. Sec. 806.07 (2). Here the wife's motion for relief was made little more than two months after the judgment and was certainly within a reasonable time.

Whether the motion to reopen was brought pursuant to sec. 806.07 (1) (a) or (h), Stats., the test on review of the trial court's order refusing to reopen the judgment is still the same: Was such refusal an abuse of discretion? *See Hansher v. Kaishian,* 79 Wis.2d 374, 255 N.W. 2d 564 (1977) ; *Maier Construction, Inc. v. Ryan,* 81 Wis.2d 463, 472, 260 N.W.2d 700 (1978) ; and *In Matter of Estate of Smith,* 82 Wis.2d 667, 674, 264 N.W.2d 239 (1978).

The trial court here gave no reasons for denying the wife's motion to reopen and reconsider the judgment. The record contains simply the written order denying such motion. The court did not hold a hearing on the motion, nor issue a memorandum decision indicating reasons for denying it. This court has said that a decision which requires the exercise of discretion and which on its face demonstrates no consideration of any of the factors on which the decision should be properly based

constitutes an abuse of discretion as a matter of law. *McCleary v. State,* 49 Wis.2d 263, 278, 182 N.W.2d 512 (1971). However, this court is required to uphold a discretionary decision of the trial court if, from the record, it can be concluded *ab initio* that there are facts of record which would support the trial judge's decision had discretion been exercised on the basis of those facts. *Klimas v. State,* 75 Wis.2d 244, 247, 249 N.W.2d 285 (1977); *Hyslop v. Maxwell,* 65 Wis.2d 658, 664, 223 N.W.2d 516 (1974). Thus, the record in this case must be reviewed to see if there are facts contained therein which would support the trial court's decision not to reopen and reconsider the judgment. After a review of the record, we conclude that no such facts can be found, and on the contrary, the record supports the wife's motion to reopen the judgment and reconsider the property division.

Contrary to the trial court's statements and the attorneys' arguments, the record in this case does not reveal that the wife ever specifically agreed to the oral property division stipulation her trial counsel entered on the record on her behalf. At best, there is a statement by the husband's attorney that the parties were in court and agreed to such stipulation. The wife, however, was never specifically asked on the record whether she did in fact agree or understand what was being stipulated. In *Miner v. Miner,* 10 Wis.2d 438, 103 N.W.2d 4 (1960), this court stated at p. 443:

". . . The [trial] court has the same serious duty to examine carefully such agreements or stipulations against the background of full information of the economic status and resources of the parties as it has in making a determination without the aid of such an agreement. The parties should be examined to determine if they understand the provisions and the effect of the agreement, that it was fairly and voluntarily entered into and was not made with any concessions by either party that the suit would be uncontested. There is no such

thing in this state as a divorce by consent or agreement. The parties cannot by stipulation proscribe, modify, or oust the court of its power to determine the disposition of property, alimony, support, custody, or other matters involved in a divorce proceeding. When a court follows and adopts an agreement of the parties making it a part of its judgment, the court does so on its own responsibility, and the provisions become its own judgment."

See also, *Bliwas v. Bliwas*, 47 Wis.2d 635, 178 N.W.2d 35 (1970), and sec. 247.10 requiring court approval of stipulations.

The problem in the instant case is that the stipulation stated on the record by the wife's attorney and thereafter restated by the trial court in granting a division of the estate, did not specifically deal with the accounts the wife held in her own name. Reading the stipulation as dictated into the record, it appears that the husband was to pay the wife the total sum of $43,750. No mention was made at that time that that amount should be reduced by $5,442 the wife already had in her possession. It is understandable, under these circumstances, that the wife could be confused and would object to the proposed findings of fact and judgment drafted by her attorney which specifically gave the husband credit for the accounts she held in her own name. Had more care been taken at the time the oral stipulation was presented, this problem probably would have been obviated. Similarly, had the trial court questioned the parties with respect to their understanding of the property division stipulation, the record would be more complete.

This court has said:

". . . In camera discussion of the value of the property of the parties is not uncommon and is a desirable practice to resolve sometimes difficult issues in a manner satisfactory to the parties. However, if an agreement or a stipulation is resolved the attorneys and the trial court must make an effort to have the agreement ade-

quately reflected in the record." *Schmidt v. Schmidt,* 40 Wis.2d 649, 653, 162 N.W.2d 618 (1968).

In dealing with motions to vacate default judgments, we have in the past recognized that promptness of action to seek relief is a material factor bearing on whether relief should be granted. *Collings v. Phillips,* 54 Wis.2d 204, 210, 194 N.W.2d 677 (1972). Although the instant case is not a default situation, nevertheless promptness in seeking relief from the judgment should also be considered here. In this case, the wife almost immediately made known her objection to the property division contained in the proposed findings of fact and judgment her attorney had drafted for the court's signature. A hearing was held on her objection even prior to the time the court signed the findings of fact and entered the judgment. She appeared at that hearing and forcefully argued for herself her position that the stipulation upon which the proposed findings and judgments were based would not include the $5,442 in her own accounts. She repeatedly asked the court for the basis upon which the property division was being made. The court told her that it was based on the Financial Declarations she and her husband had filed. Yet, these declarations had been filed more than two years before the property division. Her Financial Declaration at that time did not include all the accounts she held in her own name at the time of the property division. She had accumulated more than $2,518 between the time the Financial Disclosure was made in November of 1974 and the time the property was divided in February of 1977.

Under the provisions of new sec. 247.27, Stats., which became effective in February of 1978, this problem, too, would have been obviated. That statute now requires that the parties to a divorce action file a standard form fully disclosing all their assets owned by either party separately or the parties jointly. Sec. 247.27(2) requires

that the forms be filed no earlier than 60 days prior to the final hearing nor later than 30 days prior to such hearing, and also requires that the information contained on such forms be updated to the date of the hearing on the record. Had that statute been in effect at the time the property division in the instant case was made, the Financial Declarations filed by the parties more than two years earlier could not have been relied on.

At the February 3, 1977 hearing, the wife also objected to the property division claiming that her lawyer told her the division was based on a $90,000 estate. She questioned that $90,000 figure. In fact, the findings of fact and conclusions of law and judgment ultimately signed by the court listed the assets of the parties to be divided totaling $124,167.69. At the time of the filing of the Financial Declarations, the assets listed by the parties totaled $89,324. Apparently, the $90,000 figure the wife questioned was also based on the two-year old Financial Declarations submitted by the parties. If the wife were to receive a $43,750 share of a $90,000 estate, she would receive 48% of such estate. If, however, she were to receive such share of a $124,000 estate, her portion would be 35%.

We conclude the wife has shown good cause for relief from the judgment entered in the case. The record supports the conclusion that in the interest of justice she should have been granted relief. Sec. 806.07(1)(h), Stats., gives the court broad discretionary authority to grant relief from a judgment. *See, In Matter of Estate of Smith, supra.* That section is based on Fed. Civ. P. 60. Federal cases interpreting that provision indicate that it must be liberally construed to allow relief from judgments "whenever such action is appropriate to accomplish justice." *See, Klapprott v. United States,* 335 U. S. 601, 615 (1948). This is similar to an "interest of justice" standard.

In the instant case, the record supports the conclusion that the wife should be granted relief from the judgment and stipulation in order to accomplish justice. The wife almost immediately made known her objection to the stipulation and judgment. She was repeatedly told by the trial court and defense counsel (and in fact her own attorney) that they could not "relitigate" the case. This was untrue because the issue of property division was never litigated in the first place. The wife adequately established that she did not understand the provisions of the stipulation she had entered into. The trial court failed in its duty to make sure before entering judgment based on the stipulation that the parties were fully informed of its effects. Even though in the final analysis the wife may have no complaint with the inclusion of her separate accounts into the joint estate subject to division, see sec. 247.26, Stats., nevertheless, under the circumstances presented by this case, the wife should have had the opportunity to litigate the property division issues including the value of the estate subject to division. The trial court abused its discretion in refusing to grant her relief.

The order is reversed and the cause remanded to the trial court with directions to reopen the judgment previously entered with respect to the property division, set aside the property division stipulation, and grant a trial on the issues of the division of the marital estate.

COFFEY, J., took no part.